ELLA SUPER AND JOHN SUPER, HER HUSBAND, PLAIN-
TIFFS, v. GARFIELD-PASSAIC TRANSIT COMPANY, A
CORPORATION OF NEW JERSEY, AND PUBLIC SER-
VICE CO-ORDINATED TRANSPORT, A CORPORATION,
DEFENDANTS.

Decided July 10, 1931.

For the plaintiffs, *Elmer Friedbauer.*

For the defendant Public Service Co-ordinated Transport,
*Henry H. Fryling.*

For the defendant Garfield-Passaic Transit Company,
*Alexander M. MacLeod.*

MACKAY, C. C. J. Plaintiffs in this case, Ella Super and
John Super, her husband, sought to recover compensation
from the defendants for injuries sustained as the result of
an accident which occurred on March 8th, 1930, about two-
thirty P. M.

It appears that the plaintiff Ella Super was a passenger in
the Garfield-Passaic Transit Company's bus, having paid a
fare and being entitled to ride to her destination. It further
appears that the bus in which the plaintiff was riding was
traveling in a westerly direction along Jefferson street and
stopped at the curb to discharge two passengers. On this
particular day it had been raining on and off all day. After
discharging the passengers the Garfield-Passaic Transit Com-

pany's bus started to make a left-hand turn south into Columbia avenue and when the turn had been about three-quarters completed, or when the bus was three-quarters of the way across, there was a collision between that bus and a bus of the Public Service Co-ordinated Transport.

Plaintiff's claim is that there was negligence on the part of both defendants. The Garfield-Passaic Transit Company contends that the Public Service bus ran into its bus, and therefore the negligence was that of the Public Service bus and not of the Garfield-Passaic bus.

The plaintiff Ella Super testified that the Public Service bus struck the Garfield-Passaic bus but later testified that she did not see the accident until after the impact—that she did not see the two buses come together.

The driver of the Garfield-Passaic bus testified that he pulled to the right-hand side of the curb to discharge two passengers at Jefferson street and Columbia avenue; that he looked into the mirror and saw the Chestnut street line bus approaching and that it passed safely; that he again looked into the mirror when about halfway across the intersection and at that time did not see anything approaching; that when about three-quarters of the way across he heard tires skidding on the wet pavement and that the Public Service bus skidded, striking his left front wheel and causing a very small jar in the bus of the Garfield-Passaic Company.

The testimony of this witness is the only testimony showing negligence on the part of the Public Service Co-ordinated Transport. This witness was undoubtedly very much interested in the result of the case.

Plaintiff then called the Public Service bus driver who testified that the Garfield-Passaic bus was at a standstill at the curb discharging passengers; that he blew his horn three or four times in passing and that part of his bus had already passed when the Garfield-Passaic bus started, swung left and hooked into the right door of the Public Service bus.

Anna Payda, who testified for the defendant Garfield-Passaic Transit Company, said she did not see the Public Service bus before the accident happened.

Mary Payda testified that the Public Service bus rammed into the Garfield-Passaic bus but later contradicted this by saying she didn't see the Public Service bus before the accident. Anna Payda testified that the right side of the Public Service bus and the left side of the Garfield-Passaic bus came together, but she couldn't tell what part of the Public Service bus came in contact with the Garfield-Passaic bus.

The Public Service Co-ordinated Transport produced five witnesses who were passengers having no interest in the case whatsoever. They testified that the Public Service bus driver blew his horn several times; that the bus was partly past the Garfield-Passaic bus at the time the accident happened and that the right door opposite and back of the driver of the Public Service bus was struck—one witness saying the door was knocked down and another saying the glass was broken in the door.

The Public Service Co-ordinated Transport seeks to have the verdicts set aside on two grounds: (1) Because the verdict is contrary to the weight of the evidence, and (2) because the damages awarded by the jury were excessive. The defendant Garfield-Passaic Transit Company seeks to have the verdicts set aside for the same reasons.

I recall this case very distinctly and remember the attitude and conduct of the various witnesses on the stand at the time of the trial.

I am of the opinion that the verdicts, insofar as the Public Service Co-ordinated Transport is concerned, are against the clear weight of the evidence presented. The rule to show cause as to the Public Service Co-ordinated Transport is made absolute and *venire de novo* awarded.

As to the rule granted to the defendant, Garfield-Passaic Transit Company, I cannot say that the verdict is contrary to the clear weight of the evidence presented. I am of the opinion, however, that the verdict in the case is excessive insofar as Ella Super is concerned. She was injured on a Saturday and did not go to see a doctor until the following Monday, and after that she did not see a doctor until the following Saturday. She testified that she was confined to

her bed for a period of three months, though it appears that two days after the accident the Garfield-Passaic bus driver found her at home in a kimona. She let him in and conversed with him in broken English. Dr. Lesko has been giving her electric treatments for her arm.

Most of the witnesses say the impact was very slight, and further than that, the testimony is that the Garfield-Passaic bus was going at a very slow rate of speed and the Public Service bus was traveling between eight and twelve miles an hour.

There is testimony that Mrs. Super said she simply struck her eye on the brass rail of the bus but no mention was made of any injury to her arm. There were no marks on the arm at the time of the trial and it was admitted there was no fracture. I watched Mrs. Super closely on the witness stand when she was asked to raise her arm and noticed that she hugged it close to her side every time she was asked to raise it; and on one or two occasions when the question was not directed to her arm she moved it out from her side and did not seem to have great difficulty in moving it.

Insofar as the Garfield-Passaic Transit Company is concerned, I am of the opinion that the verdict of $7,500 to Mrs. Super is excessive. If Ella Super will, within twenty days from the entry of an order hereunder, consent to a reduction of her verdict to $5,000, the rule granted to Garfield-Passaic Transit Company will be discharged, otherwise the rule will be made absolute as to her and a new trial granted as to damages only.

The rule to show cause will be discharged as to the plaintiff John Super.

The rule to show cause granted to Garfield-Passaic Transit Company will be discharged as to John Super.